# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DANIELLE GOLDMAN-BROWN

    Plaintiff,                                                      Case No.

v.                                                                    Hon.

CONSUMERS ENERGY,

    Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the complaint.

## **COMPLAINT AND JURY DEMAND**

Plaintiff Danielle Goldman-Brown, by and through her attorneys, HURWITZ LAW PLLC, hereby alleges as follows:

1

## INTRODUCTION

1. This is a civil action for money damages, liquidated damages, costs, attorneys' fees and other relief against Defendant Consumer's Energy ("Defendant").

2. Plaintiff Danielle Goldman-Brown asserts a claim of gender and race discrimination in violation of 42 U.S.C. § 1981, the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. 37.2101, *et seq.*

## PARTIES AND JURISDICTION

3. Plaintiff Danielle Goldman-Brown ("Plaintiff") is an individual residing in Keego Harbor, Oakland County, Michigan.

4. Consumers Energy is an energy company headquartered in Jackson, Jackson County, Michigan.

5. The United States District Court for the Eastern District of Michigan has subject matter jurisdiction over claims under 42 U.S.C. § 1981 and the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e, *et seq.*, pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under the claim under the Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA"), M.C.L. 37.2101, *et seq.* pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), as it is the district where Defendant resides.

7. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on July 6, 2023, and received a Right to Sue letter on February 23, 2024.

## GENERAL ALLEGATIONS

8. Defendant is a for-profit utility company that provides electricity and natural gas for Michigan residents.

9. Plaintiff was hired by Defendant on April 16, 2015, and her most recent role was as a Supervisor for Defendant.

10. Plaintiff was the only black woman who reported to her supervisor Kyle Howell and was one of only two black employees under his supervision.

11. Plaintiff was only one of two black women in Defendant's entire Gas Distribution Department.

12. Plaintiff functioned as a leader within her team and served as a mentor to other employees.

13. Plaintiff had no prior history of discipline.

14. Plaintiff never received any formal or informal warnings.

15. Plaintiff was never placed on a performance improvement plan.

16. Plaintiff consistently received positive performance reviews.

3

17. In private meetings with Plaintiff's supervisor Kyle Howell, she was told that she was doing well, and Mr. Howell intended to place her in an upcoming leadership program for Defendant.

18. Additionally, Mr. Howell asked Plaintiff to join weekly managerial review meetings for her valuable insights and input.

## Plaintiff's Hostile Work Environment

19. Plaintiff was the only black woman on her team.

20. Plaintiff's colleagues Cale Collier and Cole Chapo consistently used racial slurs and derogatory language when speaking both to and regarding Plaintiff.

21. It was well known that Mr. Collier and Mr. Chapo were regularly using racist and sexist language against Plaintiff, and Plaintiff had reported this conduct to both Mr. Howell and his manager Tyrone Knox.

22. Neither Mr. Howell nor Mr. Knox did anything to correct or prevent the hostile situation.

23. On information and belief, neither Mr. Howell nor Mr. Knox acted on Plaintiff's reports.

24. Plaintiff further reported Mr. Collier and Mr. Chapo's discriminatory behavior to Erschal Walker, Mr. Knox's manager. Additionally, Plaintiff contacted Defendant's Human Resources department to report her colleagues.

25. Plaintiff reported the issue to Defendant's Senior Vice President, Tanya Berry.

26. Despite her complaints, Mr. Collier and Mr. Chapo continued their use of racial slurs and derogatory language, and continued to subject Plaintiff to a hostile work environment.

27. Plaintiff's mental health deteriorated due to her hostile workplace such that she sought treatment from a therapist.

### Plaintiff's Job Performance

28. Plaintiff holds two bachelor's degrees and a master's degree.

29. At the time of her termination, Plaintiff managed more individuals than many other individuals on Defendant's leadership team.

30. Despite her hostile work environment, Plaintiff performed her job well and received positive performance reviews throughout her tenure with Defendant.

31. Plaintiff was eager to go above and beyond in her job duties and would regularly request additional assignments from Mr. Howell and Mr. Knox.

32. However, Mr. Chapo and Mr. Collier instead received additional assignments and support from management, while Plaintiff did not.

33. Plaintiff would visit her crew in the field multiple times daily, despite persistent computer issues hindering her ability to log site visits.

34. Plaintiff went so far as to respond to early morning and late-night emergency calls in locations that she did not feel physically safe in as a black woman.

35. In private meetings with Mr. Howell, she was told that she was doing well, and Mr. Howell intended to place her in an upcoming leadership program for Defendant.

36. Additionally, Mr. Howell asked Plaintiff to join weekly managerial review meetings for her valuable insights and input.

**Plaintiff's Performance Review**

37. On January 30, 2023, Plaintiff received an unfavorable performance review for the 2022 year, stating that she needed to improve her job performance.

38. The most prominent negative statement in Plaintiff's 2022 performance review noted that she did not consistently meet her required five in-field team visits each week.

39. Throughout 2022, Plaintiff was experiencing computer issues which hindered her ability report her in-field meetings, all of which she had reported to her managers and supervisors.  In fact, Plaintiff performed each of these field meetings.

40. Plaintiff spoke with Mr. Howell regarding her "needs improvement" rating.

41. Mr. Howell told Plaintiff that her "needs improvement" rating was a mistake, and he would work to correct the issue.

42. Mr. Howell never followed up on his promise to reevaluate her performance rating.

43. Plaintiff ultimately decided to take the situation into her own hands and made an appeal to Defendant's Human Resources department to amend her performance review.

44. Following Plaintiff's performance review, she received a pay increase that fell short of what had been previously agreed to by her managers and in Human Resources meetings.

45. Plaintiff was told by Human Resources that her lower pay increase was in line with Defendant's new remuneration structure.

46. However, Plaintiff later discovered that her pay increase was significantly lower than those given to her white, male colleagues Mr. Collier and Mr. Chapo.

47. Plaintiff made a complaint regarding her lower raise to Diversity, Equity, Inclusion Consultant Nathan Water, together with Mr. Knox, Mr. Walker, and Mrs. Berry.

48. Mr. Walker informed Plaintiff that at least twenty black women who worked for Defendant had made similar complaints about lower remuneration and poor performance reviews.

49. Mr. Walked stated that "[Defendant] has business partners that will side with the leaders and won't address things appropriately."

## Plaintiff's Termination

50. Following her complaint, Plaintiff became aware that Mr. Howell has informed her colleagues that he intended to terminate her.

51. Mr. Howell went so far as to include Mr. Chapo in meetings with Plaintiff so that he could learn her responsibilities and eventually replace her.

52. Even with her pending termination, Mr. Chapo and Mr. Collier continued to make racially and sexually discriminatory comments to and regarding Plaintiff.

53. Plaintiff was terminated on April 6, 2023, for her low performance rating.

54. When Plaintiff attempted to apply for unemployment, the Michigan Unemployment Insurance Agency informed her that Defendant had reported that Plaintiff had been terminated for misconduct.

55. Plaintiff was the only black woman who reported to Mr. Howell and only one of two black employees under his supervision.

56. In fact, Plaintiff was only one of two black women in Defendant's entire Gas Distribution Department.

57. Plaintiff was still seen as a leader up to her termination.

58. Plaintiff was well qualified for her position and had a history of positive performance reviews.

59. Upon information and belief, Defendant replaced Plaintiff with a white employee.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

60. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations as if fully set forth herein.

61. Plaintiff is a member of a protected class (African American).

62. During Plaintiff's employment with Defendant, Defendant violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of employment "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981(b), as amended.

63. Plaintiff was treated differently, discriminated against, and denied the opportunity to perform her job duties based on her race.

64. Plaintiff received a lower salary and lower pay increases than other similarly situated, white employees.

65. During her employment, Plaintiff did not enjoy the same benefits,

9

privileges, terms, or conditions of employment as Defendant's white employees.

66. Defendants' treatment, practices, and policies directed toward Plaintiff denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property "as enjoyed by white citizens," in violation of 42 U.S.C. § 1981, as amended.

67. Through Defendants' actions and treatment of Plaintiff, there is ample evidence that Defendants intended to discriminate against Plaintiff on the sole basis of Plaintiff's race.

## COUNT II
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
## RACE DISCRIMINATION

68. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

69. At all times material to this proceeding, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

70. Plaintiff is a member of a protected class based on her race (African American).

71. Defendants' actions were motivated by unlawful discrimination against Plaintiff because of her race.

72. Defendants subjected Plaintiff to adverse employment actions based on

her race.

73. Plaintiff was subjected to a hostile work environment, including negative performance reviews, lower remuneration, exposure to chemical fumes, and retaliation because of her race.

74. Defendants' actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

75. As a direct and proximate result of Defendants' actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

76. As a further direct and proximate result of Defendants' actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

## COUNT III
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e
## GENDER DISCRIMINATION

77. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

78. At times material to this proceeding, Defendant was an employer with

greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

79. Plaintiff is a member of a protected class based on her sex (female).

80. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her sex.

81. Defendants subjected Plaintiff to adverse employment actions, including but not limited to a hostile workplace environment.

82. But for Plaintiff's sex, Defendant would not have subjected Plaintiff to such adverse employment actions.

83. Defendants' actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

84. As a direct and proximate result of Defendants' actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

85. As a further direct and proximate result of Defendants' actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

## COUNT IV
## SEX AND GENDER DISCRIMINATION IN VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 ET SEQ.

86. Plaintiff hereby incorporates by reference all paragraphs as if fully set forth herein.

87. Defendant employed Plaintiff within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2010 et seq., ("ELCRA").

88. Defendant is an employer within the meaning of the ELCRA.

89. The ELCRA prohibits, among other things, discrimination based upon race and gender.

90. Plaintiff is an African-American female.

91. Plaintiff was qualified for her position.

92. Plaintiff was held to different standards than her white male counterparts.

93. Plaintiff received a lower salary and lower pay increases than other similarly situated, white employees.

94. During her employment, Plaintiff did not enjoy the same benefits, privileges, terms, or conditions of employment as Defendant's white employees.

95. As a direct and proximate result of Defendants discriminatory conduct, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to: lost wages; damages to

professional reputation; emotional distress; outrage, humiliation; indignity and disappointment.

**COUNT V**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. 2000(e)(3)(a)**

96. Plaintiff incorporates the preceding allegations as if fully set forth herein.

97. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

98. Plaintiff engaged in protected activity by opposing Defendant's discriminatory behavior.

99. Defendant subsequently subjected Plaintiff to adverse employment actions by terminating her employment.

100. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

101. But for Plaintiff's protected activity, Defendant would not have subjected her to such adverse actions.

102. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

103. As a direct and proximate result of Defendant's actions, Plaintiff has

been placed in financial distress, suffered a loss of earnings and benefits, suffered an impairment of her earning capacity and ability to work, and will continue to suffer in the future.

104. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment, and will continue to suffer in the future.

## COUNT VI
## RETALIATION IN VIOLATION OF
## MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT
## M.C.L. 37.2202(a)(1)

105. Plaintiff incorporates the preceding allegations as if fully set forth herein.

106. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2202 *et seq*.

107. Plaintiff engaged in protected activity by opposing Defendant's discriminatory behavior.

108. Defendant subjected Plaintiff to adverse employment actions including terminating her employment.

109. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

110. But for Plaintiff's protected activity, Defendant would not have subjected her to such adverse actions.

111. As a result of Defendant's conduct, Plaintiff has suffered financial loss and emotional distress as described herein.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff claims as follows:

A. Judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, compensatory damages, emotional distress, punitive damages, and attorney fees under the 42 U.S.C. § 1981, Title VII, and the ELCRA;

B. Interest;

C. Compensatory damages, including front pay and back pay;

D. All further relief as the Court deems just and equitable.

Respectfully submitted
HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Attorney for Plaintiffs
340 Beakes St. Ste. 125
Ann Arbor, MI 48104
(844) 487-9489

Dated: April 9, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIELLE GOLDMAN-BROWN

    Plaintiff,

v.

CONSUMERS ENERGY,

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff Danielle Goldman-Brown, by and through her attorneys, HURWITZ LAW PLLC, hereby demands a jury trial in the above-captioned matter for all issues so triable.

                                Respectfully submitted
                                HURWITZ LAW PLLC

                                */s/ Noah S. Hurwitz*
                                Noah S. Hurwitz (P74063)
                                Attorney for Plaintiffs
                                340 Beakes St. Ste. 125
                                Ann Arbor, MI 48104
                                (844) 487-9489

Dated: April 9, 2024